SUMMARY MEMORANDUM OPINION;
NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE: STEPHEN THOMAS YELVERTON, | ) ) ) ) ) ) ) | Case No. 1:11-cv-1627 (RLW) |
| Debtor | | Case No. 1:11-cv-1649 (RLW) |

**MEMORANDUM OPINION**[1]

Presently before the Court are notices of appeal in two cases: 11-cv-1627 and 1; 11-cv-1649.  In both cases, the debtor seeks review of the Bankruptcy Court's decision denying a "Joint Motion to Vacate Discharge Order to Approve Reaffirmation Agreement."  For the reasons set forth below, the Court will affirm the Bankruptcy Court's decision and dismiss the debtor's appeals.

## I. FACTS

Although proceeding *pro se*, debtor Stephen Thomas Yelverton is an attorney.  On May 14, 2009, Yelverton filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Columbia.  (Case # 9-bk-414.)  On August 10, 2009, Melody H. Fennel commenced an Adversary Proceeding in the Bankruptcy Court seeking a

---

[1] This unpublished memorandum opinion is intended solely to inform the parties and any reviewing court of the basis for the instant ruling, or alternatively, to assist in any potential future analysis of the *res judicata*, law of the case, or preclusive effect of the ruling.  The Court has designated this opinion as "not intended for publication," but this Court cannot prevent or prohibit the publication of this opinion in the various and sundry electronic and legal databases (as it is a public document), and this Court cannot prevent or prohibit the citation of this opinion by counsel.  *Cf.* Fed. R. App. P. 32.1.  Nonetheless, as stated in the operational handbook adopted by our Court of Appeals, "counsel are reminded that the Court's decision to issue an unpublished disposition means that the Court sees no precedential value in that disposition."  D.C. Circuit Handbook of Practice and Internal Procedures 43 (2011).

determination that a $55,000 personal loan she made to Yelverton was non-dischargeable. (Case # 09-ap-10021.) On January 28, 2010, Yelverton filed a motion seeking dismissal of the adversary proceeding, noting that he had proposed a Plan of Reorganization and that his debt to Fennel "ha[d] been affirmed and proposed to be paid in full." (9-ap-10021, Doc. 18.) The motion was denied and later that summer, on August 18, 2010, he filed another motion to dismiss raising essentially the same grounds. (9-ap-10021, Doc. 32.)

Two days later, on August 20, 2010, the Bankruptcy Court entered an order involuntarily converting the initial bankruptcy proceeding from Chapter 11 to Chapter 7 and appointing a trustee. (9-bk-414, Doc. 323.) That order notified Yelverton that he was required, *inter alia*, to file any notices of intent to exempt property or reaffirm secured consumer debts within thirty days of the conversion date or before the first date set for the meeting of the creditors, whichever came earlier. (*Id*.) On August 22, the Bankruptcy Court mailed Yelverton a "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines." (9-bk-414, Doc. 327.) This notice informed Yelverton that the creditor's meeting would be held on September 23, 2010, and that "[t]he debtor . . . must be present at the meeting to be questioned under oath by the trustee and by creditors." (*Id*.) Yelverton was also sent a notice indicating that he was required to complete a financial management course "within 45 days after the first date set for the meeting of creditors . . . . The original date scheduled for the meeting of creditors in this case is 9/23/10." (9-bk-414, Doc. 328.)

After the conversion to Chapter 7, Fennel opposed Yelverton's motion to dismiss because the conversion had mooted the Chapter 11 repayment plan that included provisions for repaying his loan to her. (9-ap-10021, Doc. 34.) The record establishes that Yelverton's creditor's meeting was held, as planned, on September 23, 2010. (9-bk-414, 9/23/10 Minute

Entry.)  Consistent with the prior notice requiring Yelverton to attend a financial management course within forty-five days after the date set for the creditor's meeting, the Bankruptcy Court warned Yelverton, around November 24, 2010, that he needed to document completion of the course or face dismissal of his bankruptcy case "without the entry of discharge." (9-bk-414, Doc. 380.)  Yelverton' filed the requisite documentation six days later, on November 30, 2010 and, on December 3, 2010, the Bankruptcy Court entered an order of discharge. (9-bk-414, Docs. 383, 384.)

Approximately three months after the discharge, on March 1, 2011, Yelverton filed a pretrial statement in the adversary proceeding in which he indicated he was "agreeable to a reaffirmation of the [Fennel] debt . . . and [asked] that it be declared Non-Dischargeable under a Reaffirmation Agreement." (9-ap-10021, Doc. 43.)  The following month, on April 5, 2011, a pretrial conference was scheduled in the adversary proceeding, but the Bankruptcy Court Judge's notes indicate the proceeding was not held in anticipation of a Motion to Vacate the discharge for the purpose of reaffirming the agreement to pay Fennel. (9-ap-10021, Doc. 45.)  Close to six weeks later, on May 26, 2011, the Court entered an order re-setting the pretrial conference because the motion to vacate had not been filed. (9-ap-10021, Doc. 46.)  Almost a week later, on May 31, 2011, Yelverton and Fennel filed a Rule 60(b)(6) motion to vacate the discharge and approve a reaffirmation agreement as means of resolving the adversary proceeding. (9-bk-414, Doc. 396; 9-ap-10021, Doc. 48.)

On July 18, 2011, the Bankruptcy Court denied that motion. (9-bk-414, Doc. 397, 398.) In its decision, the Bankruptcy Court questioned whether it had the authority to vacate a discharge order for the purpose of approving a reaffirmation agreement: "Courts are split as to whether it is within their authority to vacate a discharge order for approval of a reaffirmation

Case 1:11-cv-01627-RLW   Document 5   Filed 09/28/12   Page 4 of 13

SUMMARY MEMORANDUM OPINION;
NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS

agreement." (9-bk-414, Doc. 397.)  The court noted that the Bankruptcy Code precludes debtors from seeking revocation of the discharge and that reaffirmation agreements are only enforceable if made prior to the entry of a discharge.  Even assuming bankruptcy courts have such authority, the Judge denied the Joint Motion because the parties failed to establish that they were entitled to relief pursuant to Rule 60(b)(6).  (*Id*.)

First, the Bankruptcy Court found the parties had not shown that disallowing the reaffirmation would seriously prejudice Yelverton because, even in the absence of the reaffirmation agreement, Yelverton had various options.  The Court noted that nothing precluded Yelverton from:

> making voluntary payments to the creditor, or from fulfilling any of the other terms of the proposed reaffirmation agreement such as naming of the creditor on the debtor's life insurance policy. [Yelverton] can consent to entry of a judgment in the pending adversary proceeding, taking into account the costs and risks of litigation in arriving at a judgment amount, and the parties are free to enter into an agreement as to how the judgment will be paid, including an enforceable agreement regarding naming the creditor on the debtor's life insurance policy.

(9-bk-414, Doc. 397 at p. 10.)

Second, the Bankruptcy Court denied the Joint Motion because Yelverton had not shown that his failure to file a timely reaffirmation agreement was due to circumstances beyond his control; therefore he had not acted diligently.  (*See id*.)

Yelverton appealed the Bankruptcy Court's decision on August 1, 2011.[2] (9-bk-414, Doc. 402.) There are currently two apparently identical actions pending in the instant Court related to his proposed reaffirmation agreement with Fennel.[3] (1:11-cv-1627, Doc. 4; 1:11-cv-1649, Doc. 3.)

## II. STANDARD OF REVIEW

District Courts "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013; *see* 28 U.S.C. §158(a). On questions of fact, the District Court reviews the Bankruptcy Court's findings under the clearly erroneous standard. Fed. R. Bankr. P. 8013. However, questions of law are reviewed *de novo*. *In re Chreky*, 450 B.R. 247, 251 (Bankr. D.D.C. 2001) (citations omitted).

---

[2] In the Notice of Appeal, Yelverton claimed to be appealing the Bankruptcy Court's oral ruling denying him the right to a jury trial on claims asserted in the adversary proceeding, in addition to the denial of the Joint Motion. However, in his brief before the instant Court, Yelverton only addresses the denial of the Joint Motion. (9-bk-414.)

Yelverton also filed a Motion for Permission to Appeal In Forma Pauperis in the Bankruptcy Court. The Bankruptcy Court has not yet ruled on this motion. (9-bk-413, Doc. 403.) However, the instant Court will consider the motion filed with the present Court and hereby grants the motion.

[3] Yelverton filed the first Notice of Appeal in this Court on September 9, 2011 (1:11-cv-1627) and later filed a second Notice of Appeal in this Court on September 13, 2011 (1:11-cv-1649). It is unclear why Yelverton filed two actions because both appeals appear to be identical. Yelverton also filed the same brief in both cases. Although Yelverton has served the necessary parties, no response to Yelverton's appellate brief was filed.

## III. ANALYSIS

**A.**     **Rule 60(b) Relief**

As the Bankruptcy Court noted, courts are split as to whether it is within the authority of a Bankruptcy Court to vacate a discharge order for approval of a reaffirmation agreement. (9-bk-414, Doc. 398 at pp. 5-9.)  Yelverton seeks relief pursuant to Federal Rule of Civil Procedure 60 [4] which provides as follows:

> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
>> (1) mistake, inadvertence, surprise, or excusable neglect;
>>
>> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>>
>> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>>
>> (4) the judgment is void;
>>
>> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>>
>> (6) any other reason that justifies relief.
>
> **(c) Timing and Effect of the Motion**.
>
>> (1) **Timing**. A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

Fed. R. Civ. P. 60(b)-(c).

---

[4] Pursuant to Federal Rule of Bankruptcy Procedure 9024, Federal Rule of Civil Procedure 60 applies in Bankruptcy cases.

Although Rule 60(b) allows for relief from a final order, the Bankruptcy Rules appear to limit application of Rule 60(b) where the debtor seeks to reaffirm a debt after his bankruptcy has been discharged.  First, the Bankruptcy Rules provide that the Court may revoke a discharge upon the request of a trustee or creditor, but the rule does not provide for such authority upon the request of the debtor.  11 U.S.C. §§ 727(d)-(e); *In re Engles*, 384 B.R. 593, 598 (Bankr. N.D. Okla. 2008).  Additionally, even if a debtor could revoke his own discharge, the Bankruptcy Rules present another hurdle.  Reaffirmation agreements "shall be filed no later than 60 days after the first date set for the meeting of creditors."  Fed. R. Bankr. P. 4008(a).  While the "court may, at any time and in its discretion, enlarge the time to file a reaffirmation agreement," Fed. R. Bankr. P. 4008(a), such agreements are only valid if they are "made <u>before</u> the granting of the discharge" and filed with the court.  11 U.S.C. §§ 524(c)(1), (c)(3); *see e.g., In re Engles*, 384 B.R. at 598.

> In the event that the parties are unable to file a reaffirmation agreement in a timely fashion, the rule grants the court broad discretion to permit a late filing. . . . [The Rules] accommodate[ ] such an extension <u>by providing for a delay in the entry of discharge during the pendency of a motion to extend the time for filing a reaffirmation agreement</u>.

Fed. R. Bankr. P. 4008 advisory committee's note (emphasis added).

In the present case, no delay of this discharge was sought; the reaffirmation agreement was made and filed five months after the discharge.  (Yelverton Br. ¶ 8.).  Thus, it appears that the relief Yelverton seeks is not available under the Bankruptcy rules.

B.     **Even if Rule 60(b)(6) Relief Were Available, Yelverton Has Not Established That He Is Entitled to Relief**

SUMMARY MEMORANDUM OPINION;
NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS

There are three limitations to granting Rule 60(b) relief.  "First, Rule 60(b) includes a requirement that the motion 'be made within a reasonable time' and the more specific 1–year deadline for asserting three of the most open-ended grounds of relief (excusable neglect, newly discovered evidence, and fraud)."  *Salazar v. District of Columbia*, 633 F.3d 1110, 1116 (D.C. Cir. 2011) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005); Fed. R. Civ. P. 60(c)) (some internal quotation marks omitted).  Although our Circuit has not established a standard for assessing what constitutes a "reasonable time," there are several relevant factors a court may consider, including the reason for the delay and whether the non-movant will be prejudiced by granting the motion.  *Salazar*, 633 F.3d at 1118 & n.5 (citations omitted).

With respect to the second limitation, the United States Supreme Court has "required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment."  *Id*. at 1116 (citations omitted).  "Finally, Rule 60(b) proceedings are subject to only limited and deferential appellate review."  *Id*. at 1116 (citation and internal quotation marks omitted).

Yelverton argues that the Bankruptcy Court committed several errors of law in its application of Rule 60(b)(6).  First, he argues that the Bankruptcy Court erred by finding that a "lack of diligence" precludes a finding of "extraordinary circumstances."  (Yelverton Br. ¶ 36.)  He asserts "lack of diligence" is measured in relationship to whether the motion was filed within one year after the judgment from which the movant is seeking relief.  Since he filed his motion five months after the Bankruptcy Court's order, he argues that the only other basis for finding "lack of diligence" relates to whether there is prejudice to the non-moving party.  (Yelverton Br. ¶¶ 39-40.)

Yelverton's interpretation of Rule 60(b)(6) is not supported by the law. As an initial matter, the one year requirement determines whether motions are timely when filed "under clauses (1), (2), and (3), covering fraud between the parties, newly discovered facts, and misconduct of a party." *See Goland v. CIA*, 607 F.2d 339, 372 (D.C. Cir. 1978) (citations omitted). Moreover, whether or not a Rule 60(b) motion is filed within a year, the rule provides that "[a] motion under Rule 60(b) must be made <u>within a reasonable time</u>." Fed. R. Civ. P. 60(c)(1) (emphasis added). Thus, even Yelverton's motion (filed five months after the discharge order) is subject to the reasonableness requirement and diligence is certainly one of many factors that might determine reasonableness, along with whether there was prejudice to a party. *See Salazar*, 633 F.3d at 1118 & n.5 (citations omitted). Additionally, our Circuit has explained that "[a] litigant's diligence in pursuing review of a decision, either through appeal or through Rule 60(b)(6) relief, is relevant in assessing whether extraordinary circumstances are present. . . . [Indeed] 'lack of diligence' effectively precludes a finding of 'extraordinary circumstance.'" *Salazar*, 633 F.3d. at 1118-19, 1121. (citation omitted).

In the present case, the Court finds that Yelverton did not file his motion "within a reasonable time." On January 28, 2010, Yelverton first informed the Bankruptcy Court that he had prepared a reorganization plan that included repaying Fennel. (9-ap-10021, Doc. 18.) While he made that plan prior to conversion of the Bankruptcy to Chapter 7, nothing prevented him from asking the Bankruptcy Court to reaffirm the Fennel debt after the conversion. Indeed, as discussed above, reaffirmation agreements "shall be filed no later than 60 days after the first date set for the meeting of creditors." Fed. R. Bankr. P. 4008. The first date set for his creditor's meeting was September 23, 2010; thus, he had until November 22, 2010 to seek

affirmation of the Fennel debt that he had first proposed to repay back in January of that same year.  (*See* 9-bk-414, Doc. 327.)

Rather than seek a timely affirmation, he did what was necessary to effectuate the discharge of all debts.  For example, he attended the mandatory creditor's meeting.  He also promptly responded to the Bankruptcy Court's notice warning him that he faced dismissal of his bankruptcy "without entry of discharge" because he had failed to file his financial management verification.  (9-bk-414, Docs. 380, 383.)  After filed the verification, the discharge was immediately entered in December 2010 and he waited five months, until May 31, 2011, to file the reaffirmation agreement.  Nothing about these facts indicates that he acted within a reasonable amount of time given that he had originally proposed repaying the loan in January 2010, more than sixteen months prior to filing his motion for reaffirmation.  *See Salazar*, 633 F.3d at 1118 & n.5 (noting that the reason for the delay is a factor to consider when whether the motion was filed within a "reasonable time") (citations omitted).

While the reasonableness determination can take into account any prejudice to non-moving parties, the record establishes that relief from the discharge and entry of the reaffirmation agreement is not the only method for achieving Yelverton's goal.  The Bankruptcy rules specifically provide that a discharged debtor may voluntarily repay his debts.  11 U.S.C. § 524(f).  Indeed, the Bankruptcy Court noted that Yelverton can consent to entry of a judgment in the Fennel adversary proceeding and the parties would be free to negotiate the terms of the judgment, including an enforceable agreement regarding naming Fennel on his life insurance policy.  (9-bk-414, Doc. 397 at p. 10.)  Yelverton has not put forth any legal authority or facts

that might contradict the Bankruptcy Court's observation. Thus, there is nothing in the record that might indicate prejudice to Fennel necessarily flows from letting the discharge stand.[5]

The Court also finds that Yelverton has not established "extraordinary circumstances" or diligence. Although he claims to have been "surprised" by entry of the discharge, the record reflects that he had sufficient notice that the discharge was imminent. Any objections to the discharge must filed within sixty days after the first date is set for the creditor's meeting. Fed. R. Bankr. P. 4004(a). While that time period may be enlarged, once the sixty days or the enlarged time period expires, the Bankruptcy court "shall forthwith" enter discharge. Fed. R. Bankr. P. 4004(b)-(c). Thus, if all necessary conditions had been met in the instant case, the discharge could have been entered on or around November 22, 2010.

However, the discharge was delayed because Yelverton had yet to file his verification that he had completed his financial management course. (*See* 9-bk-414, Docs. 380, 383, 384.) Once he was warned that failing to file the verification might result in dismissal of his bankruptcy case "without entry of discharge," he quickly filed the verification form and the discharge was entered only a few days later. (9-bk-414, Doc. 383, 384.) Thus, the record clearly contradicts his argument that he was "surprised" by entry of the discharge and that it was entered "with no prior notice" to him. (Yelverton Br. ¶ 50.)

Moreover, to the extent he needed additional time to negotiate the reaffirmation agreement, he could have filed a motion seeking to delay entry of the discharge. *See* Fed. R. Bankr. P. 4004(c)(2). "[I]f a Debtor sees discharge looming, but has not yet consummated a reaffirmation agreement, the Debtor may postpone the discharge merely by request." *In re Rigal*,

---

[5] Although both Yelverton and Fennel filed a Joint Motion in the Bankruptcy Court, it is noteworthy that Fennel has not joined Yelverton in this appeal.

254 B.R. 145, 148 (Bankr. S.D. Tex. 2000).  Yelverton saw the discharge "looming" and he elected to forego filing the appropriate motions in a timely fashion.

Thus, the record does not establish that he was diligent.  Diligence is measured by a debtor consciously pursuing efforts to achieve their desired intention.  *In re Edwards*, 236 B.R. 124, 127 (Bankr. D.N.H. 1999).  Such

> efforts include filing timely motions to insure that the time period for the debtor to enter into a binding reaffirmation agreement . . . does not expire due to the debtor's lack of diligence.  Discharge orders should not be vacated at the request of debtors who have not been conscientious and diligent in performing their stated intentions.

*Id*.  Our Circuit has warned that the "extraordinary circumstances" [6] determination is subject to a "restrictive understanding of Rule 60(b)(6)" that focuses on whether the movant failed to act due to circumstances beyond his control or whether the movant instead made a voluntary decision to forego a particular course of action. *Salazar*, 633 F.3d at 1120.  Consequently, "Rule 60(b)(6) should be only sparingly used and may not be employed simply to rescue a litigant from strategic choices that later turn out to be improvident." *Salazar*, 633 F.3d at 1120 (internal quotation marks omitted).

Because Yelverton did not file his motion "within a reasonable time," he was not diligent and has not put forth any evidence of "extraordinary circumstances," the Court finds that he is not entitled to relief under Rule 60(b)(6). [7]

---

[6] To the extent Yelverton argues that he must establish something less than extraordinary circumstances to obtain relief under subsection (b)(6) because he filed his motion less than one year after the Bankruptcy Court's order, the Court still finds that he is not entitled to relief.

[7] To the extent Yelverton argues that the Court should have considered whether he was entitled to relief under a Rule 60 subsection other than (b)(6), (*see* Yelverton Br. ¶¶ 41-45), such an argument fails for three reasons.  First, this argument is inconsistent with his reliance on subjection (b)(6) in his brief.  *See Goland v. CIA*, 607 F.2d 339, 372-73 (D.C. Cir. 1978) (citations omitted) ("There is no time limit for motions brought under [subsection (b)(6)]; however, relief under this clause is not available unless the other clauses, (1) through (5), are

## IV. CONCLUSION

For the reasons set forth above, the Court affirms the Bankruptcy Court's denial of the "Joint Motion to Vacate Discharge Order to Approve Reaffirmation Agreement." Both actions shall be dismissed, with prejudice.

SO ORDERED.
September 28, 2012

                                                         ROBERT L. WILKINS
                                                         United States District Judge

---

inapplicable."). Second, because Yelverton only cited to subsection (b)(6) in his Bankruptcy Court brief, to the extent there was any error by the Bankruptcy Court, Yelverton cannot now complain because he invited the error. *See Wagner v. Taylor,* 836 F.2d 596, 599 (D.C. Cir. 1987) ("It has long been settled that on appeal a litigant cannot avail himself of an error that he induced the court under review to commit.") Finally, any arguments related to other subsections are not properly before the instant Court because "it is a black letter principle of appellate review that issues and theories not asserted in the lower court are waived and will not be heard for the first time on appeal." *In re Capitol Hill Grp.*, 447 B.R. 387, 401 (D.D.C. 2011) (citations and internal quotation marks omitted); *see* 28 U.S.C. § 158(a).